**NOT FOR PUBLICATION**

```
             UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY
```

PETER EDWIN STUYVESANT,           :
                                  :    Civil Action No. 06-676 (RBK)
            Petitioner,           :
                                  :
        v.                        :    **OPINION**
                                  :
FEDERAL BUREAU OF PRISONS,        :
et al.,                           :
                                  :
            Respondents.          :


**APPEARANCES:**

>   PETER EDWIN STUYVESANT, Petitioner pro se
>   #09401-017
>   F.C.I. Fort Dix
>   Unit 5752, P.O. Box 2000
>   Fort Dix, New Jersey  08640
>
>   CHRISTOPHER J. CHRISTIE, United States Attorney
>   IRENE DOWDY, Assistant U.S. Attorney
>   402 East State Street, Room 430
>   Trenton, New Jersey  08608
>   Attorneys for Respondents

**KUGLER**, District Judge

    Petitioner Peter Edwin Stuyvesant, a federal prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The named respondents are the Federal Bureau of Prisons, John Nash, Warden at FCI Fort Dix., and Director Harley Lappin.

I.  BACKGROUND

On January 23, 1992, petitioner Peter Edwin Stuyvesant ("Stuyvesant") was sentenced to a federal prison sentence of 204 months, as imposed by the United States District Court for the Northern District of Florida, after his conviction on charges of conspiracy, and attempt, to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 841.  On August 18, 1993, Stuyvesant signed an Agreement for Participation in a Residential Drug Abuse Treatment Program ("RDAP") in the Federal Bureau of Prisons ("BOP"), and was accepted for participation in the BOP's 500-hour RDAP at FCI Fairton.  Stuyvesant completed the 500-hour program on July 28, 1994.  (See Petitioner's App. B at Exhibit 8; and Declaration of Frank Angelini, Drug Abuse Program Coordinator at FCI Fort Dix, dated March 9, 2006 ("Angelini Decl."), at ¶ 3 and Exhibit Angelini A).

Thereafter, Stuyvesant completed an institutional transitional service program at FCI Fairton on October 21, 1996.  A year later, Stuyvesant submitted an Inmate Request to Staff Member asking for a review of his eligibility status for sentence reduction under § 3621(e).  He acknowledged that he had an immigration detainer lodged against him, and that he had a two-level sentencing enhancement for weapons, but that neither of these factors would render him ineligible for sentence reduction

consideration, pursuant to Roussos v. Menifee, 122 F.3d 159 (3d Cir. 1997) and the BOP's Operations Memorandum 078-91.[1] (Petitioner's App. B at Ex. 6).

In October 1997, the BOP reviewed Stuyvesant's request and rendered a determination of "provisional 3621(e) eligibility". Stuyvesant signed the BOP's determination document, which expressly stated:

> [The inmate] understand[s] that nearing the time of your release, the Warden will determine if you are eligible for transfer to a community-based program, Community Corrections Center/home confinement.  If you are not eligible, you are not eligible for a § 3621(e) release.

(Pet. App. B, Ex. 7).

The BOP determined that Stuyvesant's projected release date, based on petitioner's anticipated good conduct credits, is August 10, 2006.  Stuyvesant asserts that, given the one-year sentence reduction allowed under § 3261(e), he should have been eligible for release on August 10, 2005.  (Pet. App. B. At Ex. 16).

In August 2004, the Unit Team at FCI Fort Dix, where petitioner was then confined, considered Stuyvesant's pre-release CCC placement under 18 U.S.C. § 3624(c).  On August 5, 2004, the Unit Team sent a Medical/Psychological Pre-Release Evaluation

---

[1] In September 1997, the BOP issued Operations Memorandum 078-91 to guide BOP staff within the jurisdiction of the Third Circuit on the procedures for sentence reduction as to those inmates affected by Roussos who had completed their RDAP requirements before Roussos was decided on July 18, 1997.  (Pet. App. B at Exs. 6-8).

form to the Health Services Unit at FCI Fort Dix.  On August 16, 2004, the Health Services Unit did not recommend CCC placement for Stuyvesant due to his many medical problems that require close monitoring and hospitalizations.[2]  Consequently, on August 19, 2004, the Unit Team found that Stuyvesant was not suitable for a CCC transfer, and denied petitioner pre-release CCC placement.  (Declaration of Nicole M. Ahmed, BOP Attorney Advisor at FCI Fort Dix, dated March 9, 2006 ("Ahmed Decl."), at Exhibit Ahmed-E).

On or about April 5, 2005, Stuyvesant was given notice that he was determined to be ineligible for community transitional services, and therefore, his projected release date under § 3621(e), *i.e.,* August 10, 2005, would be removed.  Stuyvesant refused to sign a copy of the notice.  (Pet. App. B., Ex. 17).

Respondents confirm that Stuyvesant has duly exhausted his administrative remedies as required under 28 C.F.R. § 542.10 et seq.  Stuyvesant asserts in his petition that the BOP's action on April 5, 2005 has impermissibly disrupted his "settled expectations" of a sentence reduction under § 3621(e), and that the BOP's action violates due process.  Stuyvesant contends that

---

[2] Stuyvesant suffers from a terminal liver condition, namely, Hepatitis C and end stage liver cirrhosis.  He presently has a federal tort claim pending against the BOP with respect to their failure to treat him for his condition while he was incarcerated.  Stuyvesant v. United States of America, Civil No. 05-5254 (RBK).

the BOP refused to allow petitioner's transfer to a CCC or home confinement because the BOP did not want to be held accountable for petitioner's medical treatment in the community.

## II.   ANALYSIS

A. <u>The BOP's Determination Was a Valid Exercise of Discretion</u>

United States Code Title 18 Section 3621(b) requires the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b). As an incentive for prisoners to successfully complete the program, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."  18 U.S.C. § 3621(e)(2)(B).

The BOP's residential drug abuse treatment program consists of three components: (1) a unit-based residential program lasting between six and 12 months, (2) an institution transition phase, and (3) a community transitional services component during which the inmate is transferred to a community corrections center or to home confinement for up to six months.  BOP Program Statement 5330.10, Drug Abuse Programs Manual, § 5.2.1.  In order to be eligible for early release consideration under § 3621(e), "an inmate must be able to participate in community-based programs so

5

as to complete the transitional services component of treatment in a Community Corrections Center or on home confinement." BOP Program Statement 5330.10, § 6.1.1(5).

Pursuant to the governing statutory sections, and in an exercise of the discretion vested in the BOP Director, the BOP has promulgated regulations prescribing certain additional early release criteria, inter alia excluding

> (v) Inmates who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion; ...

28 C.F.R. § 550.58(a)(v).

Courts have consistently upheld the BOP's regulatory requirement in 28 C.F.R. § 550-58, that inmates be eligible to participate in and complete community-based treatment programs to be eligible for early release under § 3621(e), as a valid exercise of BOP discretion under § 3621(e). See, e.g., McLean v. Crabtree, 173 F.3d 1176, 1180-84 & n.5 (9th Cir. 1999)(collecting cases)(regulation requiring participation in and completion of community-based transitional programs is entitled to deference under Chevron[3]), cert. denied, 528 U.S. 1086 (2000); Birth v. Crabtree, 996 F. Supp. 1014 (D.Or. 1998).

---

[3] Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent").

Further, the Supreme Court has recognized the BOP's discretion in establishing categorical eligibility criteria for early release determinations under § 3621(e).  Lopez v. Davis, 531 U.S. 230 (2001).  In Lopez, the Supreme Court held that it was a proper exercise of discretion by the Bureau of Prisons to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi).  In reaching this conclusion, the Court first noted that the language of § 3621(e)(2)(B) grants the Bureau discretion to reduce a prisoner's sentence for successful completion of a substance abuse treatment program, but fails to define any parameters by which the Bureau should exercise that discretion.

> In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design."  We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842 (1984))(other citations omitted).  Thus, "the statute's restriction of early release eligibility to nonviolent offenders does not cut short the considerations that may guide the Bureau." Lopez, 531 U.S. at 242.  See also Magnin v. Beeler, 110 F.Supp.2d 338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi), before Lopez, as a valid exercise of the Bureau's discretion).

Here, Stuyvesant has not been precluded from early release based on a "violent offender" classification, but rather because he cannot satisfy a requisite community transitional program that must be completed for early release.  Stuyvesant admittedly has serious medical conditions, which have required several hospitalizations and close monitoring.  Petitioner's medical status makes him unsuitable and ineligible for CCC transitional programs, as determined by the Unit Team and the Health Services Unit at FCI Fort Dix.  Thus, the Court finds that the BOP has properly exercised its discretion in determining that petitioner is not eligible for early release under § 3621(e) because he cannot complete the CCC transitional services requirement under that statute.  See Rublee v. Fleming, 160 F.3d 213 (5th Cir. 1998) (holding pre-Lopez that exclusion of prisoners who cannot complete community-based component of program is not a violation of due process).

Here, Stuyvesant does not explain why it is unreasonable for the BOP to take into account his serious medical status in determining eligibility for CCC transitional programs, which is a requisite phase of completion for early release.[4]  Since mandatory completion of a community-based program is required for early release under § 3621(e), petitioner's ineligibility for CCC placement as determined by the BOP is a legitimate factor considered by the BOP in denying early release.

B.  No "Settled Expectation" of Early Release

Moreover, this Court finds that Stuyvesant has not demonstrated a reasonable or "settled expectation" of early release.  At the time petitioner entered into an RDAP agreement in 1993, Congress had not yet enacted the possible sentence reduction incentive in § 3621(e).  However, the agreement did place Stuyvesant on notice that he had to complete a transitional community-based services program as part of the RDAP requirements.

---

[4]  There is no dispute that petitioner suffers from a serious liver condition and has needed hospitalizations and close monitoring.  While petitioner may contend that the BOP has failed to treat his condition in the past, and has a pending tort claim in this regard, such allegations do not support the claim that the BOP's decision to deny CCC placement was arbitrary and capricious.  The BOP has articulated a basis for denial of CCC placement based on the need to closely monitor Stuyvesant's medical condition, as well as the fact that he requires frequent hospitalizations.

Thereafter, in 1996, the BOP amended the regulation 28 C.F.R. § 550.58 to categorically exclude from early release eligibility under § 3621(e), those inmates "who are not eligible for participation in a community-based program as determined by the Warden on the basis of his or her professional discretion." Thus, petitioner had no absolute expectation of early release unless he could complete the community-based transitional program requirement. In addition, at that time, Stuyvesant understood that his INS detainer and two-level sentencing enhancement negatively affected his prospects for early release.

Even after the BOP determined that petitioner was provisionally eligible for § 3621(e) early release, pursuant to BOP Operations Memorandum 078-91 and the <u>Roussos</u> decision, despite the INS detainer and the sentencing enhancements for weapons, Stuyvesant still had to satisfy the separate requirement for early release under § 3621(e), which mandates an inmate's successful completion of a community-based transitional program. This requirement never changed and was known to the petitioner from his initial participation in the RDAP. In fact, when the BOP gave petitioner notice of a determination of "provisional 3621(e) eligibility" in 1997, petitioner signed the notice which clearly advised him that if he was not eligible for transfer to a community-based program, he would not be eligible for early release under § 3621(e). Therefore, Stuyvesant had no settled

expectation of early release unless and until he could complete a community-based transitional program.

Finally, this Court concurs with the respondents that Stuyvesant's reference to certain Ninth Circuit cases in support of his contention of a "settled expectation" of early release is unavailing.  These cases, Bowen v. Hood, 202 F.3d 1211 (9th Cir. 2000); Cort v. Crabtree, 113 F.3d 1081 (9th Cir. 1997), and Bowen v. Crabtree, 22 F. Supp.2d 1131 (D. Or. 1998), involved inmates who had been informed by the BOP, before the final regulation of October 15, 1997 (which categorically excluded armed felons from early release consideration), that their offense or sentence enhancement conduct was "non-violent".  Thus, they had a reasonable expectation of eligibility for early release, and the 1997 regulation could not be retroactively applied to those felons who had been told by the BOP that their offense conduct did not make them ineligible for early release consideration. Pertinent here, the Ninth Circuit noted that the "provisional" aspect of those notices of eligibility related "only to the successful completion of all phases of the drug abuse treatment program ... including community transitional services."  Bowen v. Hood, 202 F.3d at 1221; see also Bowen v. Crabtree, 22 F. Supp.2d at 1135 ("provisional" refers to the inmate's individual circumstances and the conditions or requirements of the program that must be completed).

Therefore, where Stuyvesant's ineligibility for early release relates only to his inability to successfully complete the community-based program phase of the drug abuse treatment program, a condition to early release that petitioner was aware of when he received and signed the notice of his provisional § 3621(e) eligibility in 1997, Stuyvesant has not demonstrated a settled expectation of early release, and his petition will be denied accordingly.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's claim challenging his exclusion from consideration for early release under 18 U.S.C. § 3621(e) will be denied. An appropriate order follows.

S/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: March 31, 2006